LEWIS *v.* TELB, SHERIFF.

(No. L-85-217—Decided July 2, 1985.)

*V. Robert Candiello,* for petitioner.
·*Anthony G. Pizza,* prosecuting attorney, and *James D. Turner,* for respondent.

RESNICK, J. This cause is before this court on a petition for writ of habeas corpus pursuant to R.C. 2725.01 *et seq.*

Petitioner, Brenda Lewis, has invoked this proceeding by way of habeas corpus for purposes of contesting the amount of bond which has been set in the Lucas County Court of Common Pleas. Petitioner is presently confined in the Lucas County Jail on two counts of felonious assault with gun specifications and two counts of intimidation. A total cash bond of $40,000 has been set for the foregoing charges. It should be noted that convictions on some of these charges are non-probationable and carry actual incarceration time.

Petitioner is charged with two counts of felonious assault with gun specifications and, therefore, if convicted pursuant to R.C. 2929.11(B)(2), the minimum term, which may be imposed as a term of actual incarceration, shall be three, four, five, six, seven, or eight years, and the maximum term shall be fifteen years. Conviction of the firearm specification pursuant to R.C. 2929.71 requires the court to impose an additional term of actual incarceration of three years to be served consecutively with any other imprisonment imposed. Conviction of intimidation carries a minimum term of two, three, four or five years, and the maximum term of ten years.

Petitioner has exhausted her remedies with respect to bail reduction in the trial court, having filed a motion for reduction of bond and having had said motion denied; petitioner has applied to this court pursuant to R.C. 2725.02, requesting a writ of habeas corpus. The petition, while grossly deficient on its face, substantially complies with the requirements as set forth in R.C. 2725.04; therefore, this court granted the writ pursuant to R.C. 2725.06, and set the matter for a hearing on June 10, 1985.

At the outset a discussion of what type of hearing is required in a proceeding by way of habeas corpus challenging the amount of bond is required. Habeas corpus normally is an original action which requires a hearing *de novo* in the court where it is filed. However, when the issue is challenge of continued unlawful incarceration in violation of the excessive bail prohibitions of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the Constitution of the United States, we are faced with a paradox. We seem to deviate from the common rule of holding solely a hearing *de novo* in the reviewing court. In addition to holding a hearing, courts uniformly hold that the issue of abuse of discretion must be considered prior to modifying the bond. The Supreme Court of Ohio discussed this issue in the case of *In re DeFronzo* (1977), 49 Ohio St. 2d 271 [30 O.O.3d 408], wherein in a *per curiam* opinion the court stated the following:

"* * * There is an anomaly in original actions which are filed seeking habeas corpus on the grounds of excessive bail because the effect of such cases is an appeal from a decision of the trial court; yet, such cases are also considered as original actions so as to permit hearings and findings of fact. When these cases are considered as appeals, it is reasonable to require some finding of error or abuse of discretion before allowing the writ to issue overturning or modifying the decision of the trial court. When they are considered as original actions, it is just as reasonable to allow the Court of Appeals to make an independent decision based upon the hearing before it and to exercise its own discretion under Crim. R. 46 in the same manner as would the trial judge." *Id.* at 273-274.

However, prior to that decision, courts had uniformly held that the main issue is abuse of discretion, tending to treat these matters as appeals, not original actions. The Supreme Court in *Davenport* v. *Tehan* (1970), 24 Ohio St. 2d 91, specifically stated:

"The amount of bail in any given case is basically within the sound discretion of the trial court. *Colavecchio* v. *McGettrick, Sheriff* (1965), 2 Ohio St. 2d 290 [31 O.O.2d 562]; *Coleman* v. *McGettrick, Sheriff* (1965), 2 Ohio St. 2d 177 [31 O.O.2d 326]; *Bland* v. *Holden* (1970), 21 Ohio St. 2d 238 [50 O.O.2d 477].

"There are no facts alleged in the instant case which indicate in any way that the bail is excessive, or that the trial judge has abused his discretion." *Id.* at 91.

Justice Wright, while a common pleas judge, wrote in *Abbott* v. *Columbus* (1972), 32 Ohio Misc. 152 [61 O.O.2d 268]:

"It should be noted that before granting relief on petitions of this nature there must be a clear cut demonstration that the bail set by the trial court was not reasonable and that the criteria outlined above was not applied to the particular fact situation before the trial court. This is not a hearing held *de novo*. It must clearly appear from the record of the proceeding in the trial court that an abuse of discretion was present in the application of the aforementioned criteria." *Id.* at 154.

· The only clear-cut reference to the fact that these matters should in fact be

treated as hearings *de novo* was in the *DeFronzo* case wherein Judge Day of the Eighth Appellate District, sitting by assignment on the Supreme Court, stated in a concurring opinion that:

"* * * Abuse of discretion by the trial court is never an issue in an original action brought in the Court of Appeals to challenge the legality of a bond set by the trial judge in a criminal case. This was not an appeal. The Court of Appeals was trying the issue *de novo*. It had to exercise its own pristine judgment with respect to the requisite bond. Any contrary implication read into the court's opinion is misplaced." *DeFronzo, supra,* at 274-275.

In view of these divergent views we shall treat habeas corpus actions challenging the amount of bond as a hybrid. We recognize that it is an appeal from a decision of the trial court and some weight must be afforded the decision of the trial judge who originally set the bond. In addition, we also recognize that habeas corpus is an original action and as such we must hold a hearing *de novo,* requiring evidence to be presented to this court pursuant to Crim. R. 46(F) so that we can make our own independent decision as to the requisite bond.

Prior to going into a consideration of Crim. R. 46(F), we deem it advisable for us to consider the proceedings in the trial court with regard to the setting of bond in the case *sub judice.*

On May 20, 1985, petitioner was indicted on two charges of felonious assault with firearm specifications and on two charges of intimidation. On May 24, 1985, petitioner was summoned before the Lucas County Court of Common Pleas. Although the case had been assigned to Judge Christiansen, he was temporarily out of town on that date; accordingly, Judge Restivo presided at the May 24 hearing. Because petitioner had no counsel at that time, Judge Restivo appointed counsel for petitioner, continued the case until May 30, 1985, and set petitioner's bond at $10,000 on each of the felonious assault charges and set an "O.R." bond on the remaining intimidation charges. Four days later, on May 28, 1985, Judge Christiansen, the judge to whom the case had been assigned, had an opportunity to thoroughly review the indictments and, upon his due consideration, Judge Christiansen reset the petitioner's bond at $10,000, *cash only* on each of the four counts. At a subsequent arraignment petitioner pled not guilty to the charges, and the cause was set for trial. A subsequent motion to reduce bond was found not well-taken and was denied.

With that background from the trial court, we will proceed to make findings of fact pursuant to Crim. R. 46(F) which provides in pertinent part:

"Conditions of release; basis. In determining which conditions of release will reasonably assure appearance, the judge shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or of failure to appear at court proceedings."

We note that at the hearing in this court petitioner, her attorney, an assistant county prosecutor and a Toledo Police Division detective were present.

We, therefore, find the following:

(A) The petitioner was indicted for two violations of R.C. 2903.11(A)(2), felonious assault, with two specifications under R.C. 2929.71 and 2941.141, additional three years of actual incarceration for offenses involving a

firearm, and two violations of R.C. 2921.03, intimidation.

(B) In considering the nature and circumstances of the offenses charged, testimony was received tending to establish that a shotgun was fired striking one young boy in the eye causing the loss of that eye, another minor was struck in the chest area and a third youth had a pellet graze his arm. The evidence before this court tended to establish that there were several persons who witnessed this shooting and that subsequent to the incident some were allegedly threatened with violence by petitioner and her co-defendant if they testified against them.

(C) Petitioner is twenty-four years of age, a resident of Toledo and the mother of two small children.

(D) Petitioner is unemployed and has completed the ninth grade. She is presently receiving welfare assistance.

(E) The evidence revealed that in 1985, petitioner had failed to appear in court on two charges regarding failure to confine a dog. In 1980 she was convicted of driving while under the influence of alcohol.

(F) The evidence also revealed that on the day in question the petitioner had been consuming alcoholic beverages.

The court in *Abbott* v. *Columbus, supra,* succinctly stated:

"* * * [O]ur courts have consistently supported the general principle that the amount of bail must be a reasonable amount keeping in mind that the purpose for the requirement of bail is to secure the appearance of the accused at trial. The case law in this area sets out a number of factors for consideration in determining the 'reasonableness' of bail in any particular case. These are:

"1. The seriousness of the offense and the penalty for conviction for same;

"2. the evidence of character and reputation of the accused along with any criminal record if present; and

"3. most importantly, any evi-

dence bearing on the probability or lack of probability of the accused appearing for trial." *Abbott, supra,* at 153-154.

In addition, when considering the purpose of bond the Supreme Court of Ohio stated in the case of *Bland* v. *Holden* (1970), 21 Ohio St. 2d 238, at 239 [50 O.O.2d 477], that:

"The purpose of bail is to secure the attendance of the accused at his trial. The amount of bail is largely within the sound discretion of the court. The court may consider the character and past record of the accused, the seriousness of and the number of crimes for which he is charged and the penalties attached thereto. Annotation, 72 A.L.R. 801. If the penalty is not great, the accused may have no incentive to jump bail. On the other hand, *if an accused is charged with crimes the conviction for which would result in long incarceration, with little hope of early release or probation, the incentive to abscond is greater and the amount must be such as to discourage the accused from absconding."* (Emphasis added.)

Applying the foregoing factors and considerations to the facts of the instant case, we specifically conclude the following: the charges of felonious assault with firearm specifications carry a sentence of mandatory incarceration; the charges of intimidation arise from the felonious assault charges — petitioner is accused of threatening those who were to serve as witnesses against her in the assault charges; further, there is some evidence that petitioner is prone to alcohol abuse; and, finally, when petitioner was summoned before the court on previous *minor* charges, she failed to appear. We also recognize that petitioner is a homeowner and a single parent.

Having found habeas corpus to be the procedural vehicle for petitioner to assert her constitutional right to reasonable and non-excessive bail, *In re Gentry* (1982), 7 Ohio App. 3d 143, it is a general principle governing the allow-

ance of bail that the amount thereof shall be reasonable, *Abbott* v. *Columbus, supra,* at 153. Where the offense is bailable, this right to *reasonable* bail is an inviolable one which may not be infringed or denied. *State* v. *Richardson* (C.P. 1939), 30 Ohio Law Abs. 179, 181 [15 O.O. 461].

Considering the facts and the law as previously reviewed, we find that the bail of $40,000 cash is not excessive or unreasonable under the circumstances. Having made an independent judgment as to the amount of bond, we will now consider whether the trial judge abused his discretion.

To find an abuse of discretion, this court would have to conclude that the trial court's decision was arbitrarily made or was unreasonable given the circumstances, or was such that "no reasonable * * * [judge] would take the view adopted by the trial court." *Pembaur* v. *Leis* (1982), 1 Ohio St. 3d 89, 92; see, also, *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157-158 [16 O.O.3d 169]; *State* v. *Longo* (1982), 4 Ohio App. 3d 136. To make such a finding, there must have been more than simply an error in judgment. See *In re Gentry, supra,* at 145-146. If the exercise of the trial court's discretion does not reflect an attitude of unreasonableness, arbitrariness or unconscionability, given the circumstances, then there is no abuse of that discretion. See *In re Gentry, supra,* at 146; cf. *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 219-220 [24 O.O.3d

322]. We do not find abuse of discretion on the part of the trial court.

Accordingly, the relief demanded by petitioner is denied.[1] Petitioner is hereby remanded to the custody of the Sheriff of Lucas County, Ohio. Costs of this action are assessed against petitioner.

*Relief denied.*

CONNORS, P.J., concurs.

WILKOWSKI, J., dissents.

WILKOWSKI, J., dissenting. The majority decision is classically illustrative of why the federal courts have been compelled to intervene in state criminal proceedings to arrest constitutional abuse. A few more decisions like the instant one and federal pre-emption will one day, likely, be total.

The cash bond of $40,000 set by the trial court is not only excessive but manifestly prohibitive — actually, preposterous. Guarantees set forth in the federal and state Constitutions safeguarding individual rights demand a substantial reduction; due process calls out for vindication; and equal protection urges remedial action. But this court cannot hear. It is deaf.

The petitioner remains a prisoner in the custody of the sheriff under unlawful pre-trial detention for three reasons: one, she is poor; two, she is the subject of invidious discrimination; and, three,

---

[1] The majority of this court notes the castigating dissent of our learned fellow jurist. We also *accept* his disagreement with our decision today.

However, with regard to the gratuitous comments in the dissent describing the majority as being "deaf," "blind," having "a shocking lack of understanding of the nature and scope of habeas corpus proceedings," and finally and most troubling, "invidious discrimination" against the defendant, we are compelled to note that our decision is

based not on flowering oratory and personal preference, but on *all* the facts, Ohio case law and criminal rules. Did the dissent *forget* the intimidation charges against the defendant? Did the dissent *consider* the defendant's problems with alcohol abuse? Did the dissent *not see* the defendant's prior failure to appear on *minor* charges? Finally, does the dissent *recognize* the seriousness of the offenses and their penalties should the defendant be convicted? *None* of these facts are mentioned in the dissent.

this court, in its written opinion, evidences a shocking lack of understanding of the nature and scope of habeas corpus proceedings. Regrettably, it then proceeds to write bad law.

Petitioner came into this court holding, figuratively, the Constitution of the United States in her hands. She lay claim to inviolable rights. But the court could not see. It was blind. Nor can it go unnoticed, in a reading of the opinion, that for her efforts, petitioner was pilloried instead — stripped of her mantle of presumed innocence.

Much of what appears in the majority opinion has nothing to do with habeas corpus proceedings. Simply stated, habeas corpus is an original civil action, constitutionally authorized and instituted for the purpose of collaterally attacking unlawful confinement, imprisonment or restraint of the prisoner. When such restrictions of liberty are challenged, the guiding light of habeas corpus is "the law of the land" and not an inquiry into the quality of discretion exercised by the confining judge or party. Habeas corpus, again, is an original civil action and not a criminal appellate review. There is a difference — a big difference.

The majority herein, in effect, says: "But the Ohio Supreme Court has called habeas corpus an anomaly; and we think it is a paradox; therefore, we shall call it a hybrid." One could readily conclude, therefrom, that habeas corpus described by Blackstone as "the great and efficacious writ," shall henceforth be known, in this judicial district, as "an anomalous, paradoxical hybrid." Really; Quo Vadis?

If it was the intention of the court to discourage the future filings of habeas corpus proceedings in pre-trial detention cases then, indeed, does the opinion of the majority blow a chilling wind. But history shows not an unwillingness on the part of the federal judiciary, in such instances, to allow for a deliberate by-

pass of the state forum and proceed to decide the question without benefit of local views. Such occurrences are not infrequent and when they do occur, federalism — perhaps not as we know it but rather as it might have been — inches its way closer to the grave. Today's decision invites the continued sounding of its death knell. Invariably, too late, is the question asked: "Where did we go wrong?"

The prisoner, as I view and assess her background, is without prior criminal record irrespective of traffic charges. An unemployed mother of two small children, she has been a life-long resident of Toledo. Although owning a modest home which her mother purchased for her, she is poor and meets every test of indigency. The likelihood of her appearance at trial is substantial. I would release her upon the posting of a $4,000 bond, secured by her modest real estate, so that she can be at liberty to adequately prepare for trial.