[Cite as *In re Helfrich*, 2014-Ohio-1933.]

IN THE COURT OF APPEALS OF OHIO
FIFTH APPELLATE DISTRICT
LICKING COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF | : | Case No.13CA20 |
| JAMES HELFRICH | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| | : | |
| | : | May 2, 2014 |

<u>APPEARANCES</u>:

James Helfrich, Pataskala, Ohio, pro se appellant.

Kenneth W. Oswalt, Licking County Prosecuting Attorney, and Mark A. Zanghi, Licking County Assistant Prosecuting Attorney, Newark, Ohio, for appellee, State of Ohio.

\* Harsha, J.:

{¶1} James Helfrich, who is a vexatious litigator under R.C. 2323.52, appeals from a 2013 judgment finding him in contempt of court and sentencing him to concurrent terms of 20 days in jail, fining him $500, and ordering him to pay court costs.

{¶2} Initially, the state has argued that Helfrich's appeal is moot because he served his jail sentence and filed an essay in lieu of paying the fine. However, he neither acquiesced in the judgment nor intentionally abandoned his right to appeal. Therefore, we reject this argument.

{¶3} Next, we cannot address the merits of the October 26, 2011 finding of contempt because the trial court never imposed a sanction on that finding. Nor did the trial court rely on that finding of contempt to increase the sentence on Helfrich's current contempt convictions. Therefore, we dismiss Helfrich's appeal insofar as he attempts to address the court's October 26, 2011 finding of contempt.

{¶4} Helfrich also claims that the trial court's March 15, 2011 instructions do not constitute a valid court order. However, res judicata bars him from relitigating this

matter, which he previously raised in a writ action. Moreover, the trial court did not find him in contempt of these instructions in the convictions that are properly before us. Helfrich's initial claim is meritless.

{¶5} Helfrich primarily argues that the trial court's 2013 finding of criminal contempt is not supported by the evidence. But because Helfrich did not provide a transcript of the contempt trial, he cannot overcome the presumption of validity that surrounds the court's orders. Moreover, the statements made by Helfrich in the filings below support the trial court's determination that they were made for the sole purpose to intimidate the trial court judge and the Justices of the Supreme Court of Ohio, embarrass, impede, and obstruct the trial court judge in the performance of his function as the presiding judge in the case, and to bring the administration of justice into disrespect.

{¶6} Helfrich also complains the trial court denied him due process when it initially informed him it would consolidate the 21 citations for contempt into one count, but subsequently considered the citations in three separate counts. However, he overlooks the fact that subsequent to its initial pronouncement, the court issued a superseding contempt order that repackaged the citations into the five counts, three of which resulted in guilty findings. Therefore, the trial court sufficiently informed Helfrich of the charges and penalties he was facing so that any restructuring of the citations did not prejudice his ability to prepare and defend himself against the charges. Therefore, we reject Helfrich's claims challenging the propriety of his convictions for criminal contempt.

{¶7} Helfrich next argues that the trial court erred when it ordered that he be released under electronic monitoring house arrest for seven days and failed to credit these seven days towards his 20-day jail sentence. However, Helfrich has not established that the trial court abused its discretion in setting house arrest with electronic monitoring as a condition of his release pending sentencing; nor does the condition constitute confinement in lieu of bail entitling him to jail-time credit.

{¶8} Helfrich finally claims that the trial court erred in assessing all of the costs against him. We agree because the trial court included costs that were unrelated to the prosecution of the contempt charges that are the subject of this appeal.

{¶9} Therefore, we dismiss Helfrich's appeal insofar as he attempts to contest the trial court's October 26, 2011 contempt finding; we affirm the judgment involving Helfrich's 2013 contempt convictions and sentence; and we reverse the judgment assessing all costs against him and remand for further proceedings.

I. Facts

{¶10} On March 4, 2011, Judge Richard M. Markus, sitting by assignment in the Licking County Court of Common Pleas, declared Helfrich to be a vexatious litigator under R.C. 2323.52. *See* http://sc.ohio.gov/ Clerk/vexatious/helfrichJ_030411.pdf. The common pleas court required Helfrich to comply with R.C. 2323.52 by filing an application for leave to proceed if he proposed to file or continue to assert any civil case without duly authorized counsel in the Court of Claims of Ohio or any county, municipal, or common pleas court in the state. *Id.* We affirmed the trial court's declaration that Helfrich is a vexatious litigator because of "overwhelming evidence that [he] files unnecessary, inappropriate, or supernumerary pleadings and motions" and his

insistence "on raising and re-raising arguments which have been rejected by the trial court, and this Court, sometimes repeatedly." *Helfrich v. Madison*, 5th Dist. Licking No. 11 CA 26, 2012-Ohio-551, ¶ 62, appeal not accepted for review, 132 Ohio St.3d 1515, 2012-Ohio-4021, 974 N.E.2d 113.

**{¶11}** On March 15, 2011, Judge Markus issued an order setting forth procedural requirements for Helfrich to obtain leave of court to commence or pursue any civil case in a state trial court. (OP2) The order appears in Licking County C.P. case No. 2011 MD 0006, the case in which all of Helfrich's applications for leave to proceed were required to be filed. (*Id.*) The order required that Helfrich's applications for leave be typewritten or on printer font and include an attached typewritten or printer font copy of his pleading for the proposed action and one or more affidavits with any necessary supporting material to show the factual basis for each claim in the pleading. (*Id.*)

**{¶12}** After the trial court denied Helfrich's application for leave to file an eviction action because he failed to comply with the trial court's March 15, 2011 order, Helfrich filed an application in this court to appeal that order. He also filed a mandamus claim challenging that order. (OP6) We denied Helfrich's application because we were "not satisfied that these proceedings are not an abuse of process" and there did "not appear to be reasonable grounds for either of these actions." (OP8) The Supreme Court of Ohio dismissed Helfrich's appeal from our judgment. *Helfrich v. State ex rel. Markus*, 129 Ohio St.3d 1446, 2011-Ohio-4217, 951 N.E.2d 1044. Helfrich later filed a petition in the Supreme Court for writs of prohibition and mandamus against Judge Markus in which he specifically challenged the propriety of the judge's March 15, 2011 order. *See*

*http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=707326.    Pdf.    The*

Supreme Court dismissed the cause.  *State ex rel. Helfrich v. Markus*, 132 Ohio St.3d

1460, 2012-Ohio-3054, 969 N.E.2d 1229.

**{¶13}** On October 17, 2011, Judge Markus issued an order requiring Helfrich to

appear and show cause why he should not be held in contempt of court and sanctioned

for "multiple, deliberate violations" of the court's March 15, 2011 instructions.  Following

a hearing, the trial court found Helfrich to be in contempt of court on October 26, 2011

for repeatedly violating its instructions.  The trial court decided to "impose no penalty

beyond its warnings about penalties for future contumacious conduct."  On March 12,

2012, we dismissed Helfrich's appeal from the trial court's first contempt entry for lack of

a final, appealable order.

**{¶14}** On August 30, 2012, Helfrich filed an application in the trial court to

proceed in two separate eviction cases that he had an attorney file on his behalf in the

Licking County Municipal Court.  Notwithstanding the trial court's instructions, Helfrich

did not attach any supporting affidavits to his application.  *Id.* Helfrich's application

contained the following unsupported statements:

> [1.]  The Supreme Court itself is no better than [Judge] Markus, it had
> denied Helfrich right of review to challenge [Judge] Markus' actions.  In the
> kindest words, Helfrich has filed direct appeals to challenge [Judge]
> Markus' violations of the statute and the Supreme Court has been lazy,
> unlawful and acted to deny Helfrich's Constitutional Rights.
>
> [2.]  Let's cut to the chase, both of these complaints were filed by a
> member of the bar.  Helfrich does not apologize to this court for exercising
> his freedom of speech.  He knows now that specifically Chief Justice
> Maureen O'Connor is nothing but a lazy hypocrite.
>
> [3.]  [Judge Markus] ha[s] no credibility and * * * make[s] up laws for [his]
> own good.

[4.] Chief Justice Moyer has acted no better than a dictator in a third world country.

[5.] [Judge] Markus and the Supreme Court have unlawfully utilized their positions to deny the right of review, freedom of speech and constitutional rights.

**{¶15}** After Judge Markus denied Helfrich's application, Helfrich filed an application to proceed in one of the previously specified eviction cases on December 4, 2012. Attached to this application were an affidavit from Helfrich as well as unsigned affidavits bearing the names of Judge Markus, Chief Justice Maureen O'Connor, Justices Terrence O'Donnell and Judith Lanzinger, and then Justice Robert Cupp, which had been faxed to them by Helfrich.

**{¶16}** The affidavit presented by Helfrich to Judge Markus included the following unsupported statements:

[1.] I have used my judicial power and influence to build a house of cards to agitate and discriminate against James Helfrich. * * * I will continue to harass and discriminate against Mr. Helfrich.

[2.] I put the burden on Mr. Helfrich to prove he was not a Vexatious Litigator * * *. * * * During that trial, I had a pre-conceived opinion of Mr. Helfrich, and I formulated questions so I could get answers to support my opinion.

[3.] Since finding Mr. Helfrich a vexatious litigator, I have placed instructions in this action, knowing Mr. Helfrich cannot comply.

[4.] Mr. Helfrich fails to understand that his rights in this country are very limited, and as an American citizen, he cannot question wrongs, but must comply with them, even though they are intentional to deny him his right of remedy and right to defend his real property, guaranteed by the United States Constitution.

[5.] Not only have I suggested that Mr. Helfrich be sued under [R.C.] 2323.51, I have now taken it upon myself to subpoena witnesses to assist opposing counsel in their case-in-chief to collect money from Mr. Helfrich.

[6.] [I]f Kristin Rosan testifies as to her damage amount in hours, as a well-recognized Judge, I will utilize any method I can to penalize, damage, and use my position to punish Mr. Helfrich.

[7.] I was placed on the lawsuit against Helfrich with a preconceived opinion and a directive to find him guilty of Vexatious Litigation.

{¶17} The affidavits that Helfrich submitted to the Chief Justice and three of the Justices of the Supreme Court included the following unsupported statements:

[1.] I have full knowledge that there was not one shred of admissible evidence to deem [Helfrich] a Vexatious Litigator.

[2.] I have full knowledge that the statute of Vexatious Litigation has been improperly applied to James Helfrich as a means to retaliate and deter his open public criticism of the judicial system.

[3.] On or about August 15, 2012, Helfrich filed a lawsuit naming me as a party to a lawsuit filed in federal court. Case number: 12-CV-726[.] I don't deny any of the allegations to be false.

[4.] I am fully aware that Judge Richard M. Markus has and will continue to deny Helfrich his right to court, right to defend real property, and right to review.

[5.] * * * I have full knowledge that Judge Richard M. Markus and other judiciary are provoking and antagonizing Mr. Helfrich.

[6.] I am fully aware that security at the Supreme Court, as other courts[,] have targeted Helfrich as a threat because of his outspoken, yet peaceful nature.

{¶18} On December 6, 2012, Judge Markus granted Helfrich's application to proceed, but on that same date, he filed an opinion and order for criminal contempt citations charging Helfrich with 21 separate acts of criminal contempt relating to his August 30 and December 4, 2012 applications to proceed. Helfrich then filed applications to proceed in the same cases mentioned in his prior applications, which became the basis for two additional contempt citations filed by Judge Markus.

**{¶19}** On January 14, 2013, Judge Markus issued a superseding order replacing his three prior contempt citations (including the one filed on December 6, 2012) with five separate counts of criminal contempt. The first count of the superseding order charged Helfrich with criminal contempt regarding his August 30, 2012 application to proceed by not including any affidavit to support his application and by including several scandalous statements in his application, which were specified in the charge. The second count of the order charged Helfrich with criminal contempt for filing his December 4, 2012 application to proceed and faxing to Judge Markus an unsigned affidavit bearing his name and the implicit request that the judge falsely confess to several unsupported statements. The third count of the order charged Helfrich with criminal contempt for filing his December 4, 2012 application to proceed and faxing similar affidavits to the Chief Justice and three Justices of the Supreme Court of Ohio implicitly requesting that they falsely confess to several unsupported statements. The fourth and fifth counts charged Helfrich with criminal contempt for filing additional, repetitive applications to proceed. After Judge Dale Crawford was assigned to hear the contempt matter, he conducted a trial on February 21 and 22, 2013.

**{¶20}** Following trial the court convicted Helfrich of indirect criminal contempt for making the statements specified in Counts 1, 2, and 3, but released him on his own recognizance pending sentencing. Terms of release included electronic monitoring, being precluded from leaving Licking County, and being permitted to leave his home only with prior approval of the probation department. After Helfrich spent seven days under electronic monitoring house arrest, the trial court entered a judgment on March 4, 2013, sentencing him to 20 days in jail, a $250 fine, and court costs for each of Counts

1 and 2, with Count 3 being merged with Count 2 because they related to affidavits filed in connection with the same application to proceed. The court made the jail sentences for Counts 1 and 2 concurrent. The trial court found that the state failed to prove the criminal contempt it alleged in Counts 4 and 5. The trial court also gave Helfrich the option of submitting a paper on the importance of an independent judiciary in the United States in lieu of the fine.

{¶21} Helfrich sought and received a stay of the execution of his sentence pending appeal upon the filing of a $5,000 property or surety bond. Ultimately, however, he did not post the bond, and he served his 20-day jail sentence and submitted the essay specified by the trial court in lieu of paying the fine.

{¶22} We granted Helfrich's application to proceed with an appeal from the trial court's judgment finding him in contempt and imposing sentence, and granted his motion to stay the trial court order imposing court costs. After the completion of briefing, we denied the state's motion to dismiss this appeal as moot.

{¶23} This cause is now before the court on Helfrich's appeal.

## II. ASSIGNMENTS OF ERROR

{¶24} Helfrich assigns the following errors for our review:

I.     ARE JUDGE MARKUS' INSTRUCTIONS OF MARCH 15, 2011 A VALID ORDER?

II.     DID THE TRIAL COURT ERROR ON OCTOBER 26, 2011 WHEN IT FOUND HELFRICH IN CONTEMPT OF COURT FOR NOT FOLLOWING JUDGE MARKUS' INSTRUCTIONS?

III.     DID THE TRIAL COURT FAIL TO INFORM HELFRICH OF THE CHARGES AND PENALTIES[?]

IV.    CAN HELFRICH BE FOUND IN CRIMINAL CONTEMPT OF COURT FOR NOT FOLLOWING JUDGE MARKUS' MARCH 15 2011 INSTRUCTIONS[?]

V.     THE STATE FAILED TO MEET ITS BURDEN OF PROOF FOR CONTEMPT.[.]

VI.    LAW AND ARGUMENT

VII.   DID THE TRIAL COURT ERR WHEN IT DID NOT SPLIT COURT COSTS AS HELFRICH PREVAILED ON A NUMBER OF ISSUES[?]

VIII.  DID THE TRIAL COURT ERR WHEN IT ORDERED HELFRICH INTO HOUSE ARREST FOR SEVEN DAYS UNDER ELECTRONIC MONITORING PENDING SENTENCE[?]

IX.    DID THE STATE MEET ITS BURDEN OF PROOF THAT HELFRICH INTENTIONALLY INTENDED TO DEFY A COURT ORDER OR BRING THE ADMINISTRATION OF JUSTICE INTO DISRESPECT OR OBSTRUCT THE COURT IN ITS PERFORMANCE[?]

X.     IS AN APPLICATION TO PROCEED A PENDING CASE OR A CIVIL ACTION THAT CONTEMPT OF COURT CAN BE BROUGHT[?]

XI.    DID JUDGE MARKUS COERCE, AGGRAVATE OR INSTIGATE HELFRICH'S ALLEGED CRIMINAL CONDUCT[?]

XII.   DID THE TRIAL COURT ERR WHEN IT DID NOT CREDIT SEVEN DAYS OF HOUSE ARREST TO THE TWENTY DAY JAIL SENTENCE[?]

**{¶25}** For ease of analysis, we will address these assignments of error out of order.

### III. LAW AND ANALYSIS

#### A. Mootness

**{¶26}** The state first claims that we should dismiss this appeal because Helfrich's satisfaction of his jail sentence and submission of an essay in lieu of the fine renders it moot. In general, "[w]here a defendant, convicted of a criminal offense, has

voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus.

**{¶27}** Nevertheless, "[t]he completion of a sentence is not voluntary and will not make an appeal moot if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide." *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, paragraph one of the syllabus.

**{¶28}** For the reasons previously stated in our entry denying the state's motion to dismiss, which include that Helfrich sought a stay of the execution of his sentence and that he suffers collateral disabilities and loss of civil rights from the criminal contempt convictions, Helfrich has established that he neither acquiesced in the judgment nor abandoned his rights to appellate review. Moreover, because the trial court's order that Helfrich pay costs has been stayed, there would still be some relief that we could grant on appeal even if the remainder of the judgment could not be reversed. *Compare State v. Collins*, 7th Dist. Mahoning No. 12 MA 157, 2013-Ohio-5642, ¶ 16 ("But when the defendant has yet to pay his fine and costs, the appeal is not moot because there is still some relief that can be granted on appeal"). Therefore, we reaffirm our rejection of the state's claim that this appeal is moot.

B.  Appeal from October 26, 2011 Contempt Finding

**{¶29}** In his second assignment of error, Helfrich asserts that the trial court erred in finding him in contempt in its October 26, 2011 entry.  As we noted in dismissing his previous attempt to appeal this entry, this is not a final, appealable order.

**{¶30}** Courts are unanimous in holding that a contempt finding is not final until (1) the trial court finds the alleged contemnor in contempt, and (2) the trial court imposes sanctions.  *See generally Heckathorn v. Heckathorn*, 5th Dist. Stark No. 2006CA189, 2007-Ohio-5520, ¶ 8, and cases cited therein; *Home Savings & Loan Co. v. Avery Place, LLC*, 5th Dist. Delaware No. 11 CAE 03 0024, 2011-Ohio-4774, ¶ 17.

**{¶31}** The trial court has never imposed sanctions for the October 26, 2011 contempt finding.  Moreover, in its March 4, 2013 judgment entry, which is the primary subject of this appeal, the trial court emphasized that it did not consider the 2011 contempt finding in imposing the sanctions on his subsequent criminal contempt convictions to enhance Helfrich's sentence on those convictions; instead it considered him as a first-time offender under R.C. 2705.05.  Thus, no prejudicial error resulted from the 2011 contempt finding for purposes of our consideration of the merits of the 2013 contempt findings and sentence that form the primary focus of this appeal.

**{¶32}** Therefore, insofar as Helfrich attempts to appeal from the trial court's 2011 contempt finding, we dismiss this portion of his appeal for lack of a final, appealable order.  We lack jurisdiction to address the merits of Helfrich's second assignment of error.

C.  March 15, 2011 Trial Court Instructions

{¶33} In his first assignment of error, Helfrich challenges the propriety of the trial court's order setting forth procedural requirements for his applications to proceed after being declared a vexatious litigator.

{¶34} "Res judicata bars relitigation of a matter that was raised or could have been raised on direct appeal when a final, appealable order was issued in accordance with the law at the time." *State v. Griffin*, 138 Ohio St.3d 108, 2013-Ohio-5481, 4 N.E.3d 989, ¶ 3. Helfrich previously raised the issue of the propriety of the trial court's instructions in an application to proceed that we denied and a writ case against Judge Markus in the Supreme Court of Ohio. *Helfrich*, 132 Ohio St.3d 1460, 2012-Ohio-3054, 969 N.E,2d 1229. Although the first of these actions was not appealable because of R.C. 2323.52(G), the latter action was.

{¶35} To be sure, Helfrich is correct that as a general proposition, a trial court cannot take judicial notice of proceedings in another case, the rationale being that the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674, ¶ 81. But both the trial court and this court can take judicial notice of the filings in Helfrich's Supreme Court writ case, which are readily accessible from the court's website. *See, e.g., State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 974 N.E.2d 516, ¶ 8, 10 (court can take judicial notice of judicial opinions and public records accessible from the internet). In fact, it appears that the pertinent filings in the Supreme Court case were before the trial court because they are listed in the state's amended exhibit list for the criminal contempt trial. (OP110, Exs. 2L and 2M) The only reason they are not included in the

appellate court record is because Helfrich did not order the contempt hearing transcript and exhibits be transmitted as part of the record.  App.R. 9(B).

**{¶36}** Moreover, even assuming that res judicata does not bar Helfrich from attempting to relitigate the propriety of Judge Markus's order setting forth procedural requirements for his applications to proceed, he fails to establish how the instructions prejudiced him.  In the convictions that are properly before this court, the trial court did not find him in contempt for failing to follow the instructions.  And he could have followed these instructions without including the scandalous, unsupported statements included in his applications to proceed and accompanying affidavits.   Contrary to Helfrich's contentions, nothing in these instructions directed him to include the type of statements found in these affidavits.   Therefore, any error in the judge's instructions did not prejudice him.  *See State v. Taylor*, 5th Dist. Holmes No. 12 CA 18, 2013-Ohio-5751, ¶ 55 (appellant has the burden to demonstrate prejudicial error); Painter and Pollis, *Ohio Appellate Practice*, Section 7:20 (2013) ("App.R. 12(B) provides that the court of appeals must affirm the judgment of the court below and enter final judgment for the appellee if it finds no prejudicial error in any of the particulars assigned and argued in appellant's brief and that the appellee is entitled to judgment as a matter of law").

**{¶37}** Finally, while the General Assembly may prescribe procedures for judicial determination of indirect criminal contempt, *see, e.g., Caldwell v. Caldwell*, 4th Dist. Gallia No. 02CA17, 2003-Ohio-1752, there is no indication that any statute precludes a trial court from prescribing supplemental procedures when appropriate for a specific vexatious litigator.   Given Helfrich's numerous illegible, handwritten, repetitive, and

meritless filings, the trial court was justified in issuing the instructions requiring typewritten applications supported by affidavits.

**{¶38}** Therefore, we overrule Helfrich's first assignment of error.

### D. Indirect Criminal Contempt

**{¶39}** Helfrich's third, fourth, fifth, sixth, ninth, tenth, and eleventh assignments of error assert that the trial court erred in finding him guilty of indirect criminal contempt.

**{¶40}** The highly deferential standard of review for a contempt finding is abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29; *Dobbins v. Evans*, 5th Dist. Stark No. 2011CA00171, 2012-Ohio-898, ¶ 12. A trial court abuses its discretion when it is unreasonable, arbitrary, or unconscionable. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 19.

**{¶41}** Contempt is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomasczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Contempt proceedings are classified as civil or criminal based on the purpose to be served by the sanction. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555, 740 N.E.2d 265 (2001). "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order[;] [c]riminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court." *Id.* at 555. Contempt may also be direct or indirect, with indirect contempt defined as behavior which occurs

outside the presence of the court that demonstrates a lack of respect for the court or its lawful orders. *Dobbins* at ¶ 13.

{¶42} The trial court determined that Helfrich was guilty of indirect criminal contempt by filing the applications to proceed and accompanying affidavits, which contained the previously specified scandalous, unsupported statements:

> The Court specifically finds, beyond a reasonable doubt, that Mr. Helfrich committed contempt when he knowingly filed States Exhibit 10A (Count 1) and State's Exhibit 11 (Counts 2 and 3) for the sole purpose to intimidate Judge Markus and the Justices of the Supreme Court, and bring the administration of justice into disrespect. The documents further tend to embarrass, impeded and obstructed Judge Markus in the performance of his function as the presiding judge on Licking County Case No. 2011 MD 0006. The Court finds that Mr. Helfrich has the right to criticize Judge Markus and/or the Justices of the Supreme Court. But, the documents taken as a whole were not filed with the purpose to exercise his First Amendment right, but to intimidate, impede and obstruct the Court.

{¶43} In Helfrich's fifth, sixth, and ninth assignments of error, he claims that the state did not meet its burden of proof for contempt and that his statements were constitutionally protected. The trial court specified that it based its findings of indirect criminal contempt regarding Helfrich's filed applications on its review of "all of the evidence" in the case, but we do not have all of the evidence in the record on appeal because Helfrich did not order a transcript of the trial court's two-day bench trial.

{¶44} An appellant bears the burden of providing the reviewing court with a record of the facts, testimony, and evidentiary matters that are necessary to support the designated assignments of error. *Taylor*, 5th Dist. Holmes No. 12 CA 18, 2013-Ohio-5751, at ¶ 75, citing App.R. 9(B) ("the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record"). "When portions of the transcript

necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980); *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 28; *see also Murray v. Murray*, 5th Dist. Licking No. 01-CA-00084, 2002-Ohio-2505 (applying this general principle in a case in which a contempt hearing transcript was not filed as part of the appellate record). Insofar as Helfrich argues that the evidence does not support the trial court's finding of indirect criminal contempt, his failure to submit a complete transcript of all the testimony and evidence the court considered in its determination is thus fatal to his claims.

{¶45} Moreover, the limited record before this court supports the trial court's finding of indirect criminal contempt. "To sustain an indirect criminal contempt adjudication, there must be evidence by which a reasonable trier of fact could find beyond a reasonable doubt that an accused contemnor intended to bring the administration of the law into disrepute and disregard or otherwise intentionally impede, embarrass or obstruct the court in the performance of its functions"; this intent "may be shown by circumstantial evidence." *State v. Baumgartner*, 6th Dist. Ottawa No. OT-06-046, 2008-Ohio-971, ¶ 97. Although judges must necessarily withstand rude comments and insolent behavior, statements accusing judges of dishonesty and misconduct in court filings may establish behavior so outrageous that it constitutes an attack on the legal system, which is contemptuous. *Id.*

**{¶46}** Comparable to the statements upheld as contemptuous in *Baumgartner*, Helfrich's statements were made in court filings and falsely accused Judge Markus, Chief Justice O'Connor and several Justices of the Supreme Court of Ohio, and the late Chief Justice Moyer, of laziness, unlawful behavior, and bias. There is not an inkling of credible evidence in the record before us that any of the pertinent statements made by Helfrich are truthful, i.e. supported by facts.

**{¶47}** We overrule Helfrich's fifth, sixth, and ninth assignments of error.

**{¶48}** In Helfrich's third and a portion of his fifth assignments of error, he claims that the trial court erred in failing to inform him of the charges and penalties. The requirements of due process apply to both civil and criminal contempt proceedings. *Sano v. Sano*, 5th Dist. Stark No. 2010CA00252, 2011-Ohio-2110, ¶ 13, citing *In re Oliver*, 333 U.S, 257, 274-275, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Due process and R.C. 2725.03 require that a person charged with indirect contempt be provided adequate notice, time to prepare any defense, and an opportunity to be heard. *Goe v. Goe*, 5th Dist. Stark No. 2006CA00341, 2007-Ohio-6767, ¶ 30. For indirect criminal contempt charges, the accused must have notice that the court may impose criminal penalties. *See Oak Hill Banks v. Ison*, 4th Dist. Jackson No. 03CA5, 2003-Ohio-5547, ¶ 20, citing *Mosler v. United Auto., Aerospace, & Agr. Implement Workers of Am.*, 91 Ohio App.3d 840, 845, 633 N.E.2d 1193 (12th Dist. 1993).

**{¶49}** Helfrich claims that at a show-cause hearing held by the trial court on December 14, 2012, the trial court advised him that the 21 criminal contempt citations specified in Judge Markus's December 6, 2012 order would be considered as one count of contempt, with a maximum penalty of 30 days in jail, a $250 fine, and court costs; but

the trial court ultimately considered those citations as three counts, for which he received the maximum penalty of 30 days in jail, a $250 fine, and court costs on two of those counts.

{¶50} Helfrich is correct that the trial court ultimately considered the 21 citations as three different counts, instead of the one count it suggested at the show-cause hearing. Nevertheless, Judge Markus later issued a superseding contempt order that repackaged the 21 counts as the three counts that the trial court ultimately relied on to find Helfrich guilty of contempt. Helfrich was sufficiently notified that criminal penalties may be imposed. *Oak Hill Banks*, *supra*.

{¶51} There is also no indication on the record that the trial court's statements at the show-cause hearing in any way prejudiced Helfrich's ability to defend against the charges at the hearing. Again, we are hampered by the lack of a transcript of the contempt proceedings, and we must presume the validity of them. *See Logan v. Holcomb*, 3d Dist. Marion No. 9-12-61, 2013-Ohio-2047, ¶ 42 (claimed deprivation of procedural due process rights is waivable).

{¶52} Helfrich also claims that because the state brought all counts of criminal contempt under R.C. 2705.02, he did not have notice of indirect criminal contempt under common-law concepts. Judge Markus's superseding order, however, did not specify that it was limited to R.C. 2705.02, and common pleas courts have both inherent and statutory authority to punish contempts. *Burt v. Dodge,* 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992). We conclude he had sufficient notice of the charges.

{¶53} Therefore, we overrule Helfrich's third and fifth assignments of error.

**{¶54}** In his fourth assignment of error, Helfrich asserts that he could not be found in criminal contempt for not following Judge Markus's March 15, 2011 instructions. In his eleventh assignment of error, Helfrich contends that Judge Markus coerced, aggravated, or instigated Helfrich's criminal conduct. As noted previously, the propriety of Judge Markus's instructions are not before this court, and Helfrich's claimed errors flow from the erroneous premise that he was found in contempt of those instructions in the trial court's May 4, 2013 judgment. He was not found in contempt for failing to follow the instructions. Furthermore, there is no credible evidence that Judge Markus coerced, aggravated, or instigated his criminal conduct by issuing the instructions. Helfrich's fourth and eleventh assignments of error are overruled.

**{¶55}** In his tenth assignment of error, Helfrich claims that an application to proceed does not constitute a document that can serve as the basis for contempt of court. Again, Helfrich takes an unsupported myopic view of a common pleas court's contempt powers, which are not limited to court filings in pending litigation. As noted previously, contempt broadly encompasses "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank*, 27 Ohio St.2d 55, 271 N.E.2d 815, at paragraph one of the syllabus. The sole case cited by Helfrich in support of his claim does not require a contrary result. *See Mayer v. Bristow*, 91 Ohio St.3d 3, 740 N.E.2d 656 (2000). Therefore, Helfrich's tenth assignment of error is overruled.

**{¶56}** Based on the foregoing, the trial court did not abuse its discretion in finding Helfrich guilty of indirect criminal contempt for his statements in his applications

to proceed.  Helfrich's third, fourth, fifth, sixth, ninth, tenth, and eleventh assignments of error are overruled.

### E.  Electronic monitoring house arrest

**{¶57}** In his eighth assignment of error, Helfrich contends that the trial court erred when it ordered him into electronic monitoring house arrest pending sentence for seven days after he was convicted.

**{¶58}** Under Crim.R. 46(B)(3), a trial court may impose house arrest and electronic monitoring as a condition of bail.  The purpose of bail is to secure the attendance of the defendant at a court proceeding, and trial courts have discretion to impose conditions on bail, including electronic monitoring house arrest.  *See, e.g., Smith v. Leis*, 165 Ohio App.3d 581, 2006-Ohio-450, 847 N.E.2d 485, ¶ 17 (1st Dist.). Without a transcript of the contempt trial, we must presume that the evidence presented at trial supported the trial court's imposition of electronic monitoring house arrest as a condition of Helfrich's postconviction release on bail pending sentencing.  There is also no evidence in the limited record provided that establishes that the trial court's imposition of this condition was unreasonable, arbitrary, or unconscionable.  Therefore, we overrule Helfrich's eighth assignment of error.

**{¶59}** In Helfrich's twelfth assignment of error, he asserts that the trial court erred when it did not credit the seven days he spent released on electronic monitoring house arrest pending sentencing to his concurrent 20-day jail sentences for indirect criminal contempt.  But electronic monitoring house arrest as a condition for presentence release on bail is not the type of confinement that justifies credit for time served.  *See State v. Gowdy*, 7th Dist. Mahoning No. 07 MA 103, 2008-Ohio-1533, ¶

25, and cases cited therein; *see also State v. Delaney*, 12th Dist. Warren No. CA2012-11-124, 2013-Ohio-2282, ¶ 8, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 72 (pretrial electronic monitored house arrest does not constitute confinement for the purpose of receiving jail-time credit). Therefore, we overrule Helfrich's twelfth assignment of error.

## F. Costs

**{¶60}** In his seventh assignment of error, Helfrich asserts that the trial court erred when it did not split costs when he prevailed on some of the charges. The trial court ordered Helfrich to pay all of the costs. These costs total $1,140.84, and include charges that predate the contempt charges for which he was ultimately convicted and which are the subject of this appeal.

**{¶61}** R.C. 2947.23 mandates that court costs shall be assessed against all convicted defendants in criminal cases. R.C. 2947.23(A)(1)(a) ("In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs"); *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8; *State v. Green*, 5th Dist. Knox No. 08-CA-20, 2009-Ohio-2065, ¶ 107.

**{¶62}** The costs specified in the trial court filing include costs that are not related to the prosecution of the contempt charges that are the subject of this appeal. Moreover, a convicted defendant should not be liable for those costs associated with the charges on which the defendant was acquitted. *See State v. Karasek*, 2d Dist. Montgomery Nos. 17408 and 17563, 2002-Ohio-2616, 2002 WL 1041939, *6.

**{¶63}** Therefore, the trial court erred in ordering Helfrich to pay costs that were not related to the prosecution of the indirect criminal contempt charges for which he was convicted. We sustain Helfrich's seventh assignment of error and remand the cause to the trial court to enter an award of costs that is consistent with the applicable law.

IV. CONCLUSION

**{¶64}** We decline to address Helfrich's second assignment of error because we lack jurisdiction to consider his appeal of the trial court's October 26, 2011 contempt finding without any imposition of sanctions. That portion of Helfrich's appeal is dismissed.

**{¶65}** Having overruled Helfrich's first, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, and twelfth assignments of error, we affirm the March 4, 2013 judgment finding him guilty of indirect criminal contempt, sentencing him to jail, and fining him.

**{¶66}** Having sustained Helfrich's seventh assignment of error, we reverse that part of the trial court's judgment ordering Helfrich to pay all costs, and remand the cause to that court to conduct further proceedings consistent with this opinion.

APPEAL DISMISSED IN PART,
JUDGMENT AFFIRMED IN PART,
JUDGMENT REVERSED IN PART,
AND CAUSE REMANDED

## **JUDGMENT ENTRY**

It is ordered that the APPEAL IS DISMISSED IN PART, THE JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Licking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

* Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court


BY: _____
           William H. Harsha, Judge *


**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


\* William H. Harsha, Peter B. Abele, and Matthew W. McFarland, Judges of the Fourth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fifth Appellate District.